| | | |
|---|---|---|
| Betty Hendrix, | ) | C/A No.: 1:09-1283-HFF-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff ("Plaintiff" or "Claimant") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards.

I.     Relevant Background

A.     Procedural History

Plaintiff filed an application for DIB under sections 216 and 223 of Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(I), 423 on June 10, 2005. Tr. 80–82. The State agency and the Social Security Administration denied Plaintiff's application initially and upon reconsideration. Tr. 62–63, 65–67, 69–73. After an October 24, 2007 hearing before Administrative Law Judge ("ALJ") Albert Reed, at which Plaintiff, her

attorney Paul McChesney, and Vocational Expert ("VE") Feryal Jabron appeared, the ALJ issued his decision on February 22, 2008, that Plaintiff was not disabled within the meaning of the Act. Tr. 26–61 (hr'g Tr.), Tr. 12–23 (decision). After the Appeals Council denied Plaintiff's request for review of the hearing decision on April 24, 2009, the ALJ's decision became the final decision of the Commissioner. Tr. 3–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on May 15, 2009, pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).

B.      Plaintiff's Background and Medical History

Plaintiff was 52 as of her January 1, 2004, alleged onset date. Tr. 62. She has an associate's degree and past relevant work ("PRW") as a supervisor, deliverer, yard worker, landscaper, and flea market vendor. Tr. 30, 54.

1.      Medical Evidence

a.      Physical Complaints

In the years leading up to Plaintiff's alleged onset of disability, January 1, 2004, she received treatment for complaints of chest pain with no resultant evidence of cardiac disease. She also was treated for tonsillitis, shortness of breath secondary to smoking, gynecological issues, back pain, and mental problems. Tr. 232–34, 252–60, 263–365. On September 10, 2002, Plaintiff reported to Oliver T. Willard, M.D., that she stopped working because the factory where she worked had closed down. Plaintiff was "looking at entering the job market. Retraining." Tr. 270. Dr. Willard provided medication for anxiety and depression. Tr. 270. Treatment notes from Stephen R. Gardner, M.D., from November

2002, state Plaintiff had lumbar pain, but she had no signs of compression of her spinal nerve root and surgery would not help her. Tr. 315. Plaintiff underwent physical therapy for back pain from December 2002 to January 2003. Tr. 219–28. A December 2, 2002 EMG report was "generally unremarkable," but indicated possible diminished recruitment at the vastus lateralis, chronic radiculopathy, or of diminished effort secondary to pain. Tr. 298.

In June 2003, Plaintiff saw Cheryl A. Sarmiento, M.D., with complaints of feeling poorly, having right leg pain, difficulty concentrating, and lack of interest in activities. Dr. Sarmiento found no abnormalities in Plaintiff's physical examination. Tr. 364–65. She looked tired and her mood appeared to fluctuate, but her intelligence, thought process, thought content, and perception were normal. Dr. Sarmiento diagnosed lumbar radiculopathy and bipolar affective disorder and advised Plaintiff to reduce her physical activity. Tr. 365. Plaintiff continued to see Dr. Sarmiento with good results from conservative treatment involving medication management. Tr. 348–65. Dr. Sarmiento's examination findings from October 2004 show Plaintiff had obsessions about her back pain and her grades in school, although she was making all A's. Tr. 352.

On February 11, 2004, a month after her alleged onset date, Plaintiff began treatment for her back and leg pain with Bret J. Warner, M.D. Tr. 251. Dr. Warner observed that Plaintiff had a mildly antalgic gait, and he believed her pain would benefit from aquatic therapy. Tr. 216–18, 251. A year later, in 2005, Plaintiff still complained of back pain and Dr. Warner sent her for an MRI. The MRI showed degenerative changes in

her lumbar spine. Tr. 262. She returned to Dr. Warner in July 2005 with complaints of pain and swelling in both feet. He noted the MRI showed "mild degenerative changes within the lumbar spine." Tr. 236. He instructed her to exercise and to elevate both legs whenever possible to prevent further swelling. Tr. 246.

Treatment notes from Dr. Willard dated June 3, 2005, state that Plaintiff complained of a rapid heartbeat and back pain that had been moderately bothering her, but she continued to work at landscaping and driving a truck. Dr. Willard noted no abnormalities on examination. Tr. 261.

On August 2, 2005, Plaintiff again saw Dr. Warner and told him that she had applied for disability but was declined. He noted that she "is convinced that she cannot work because of chronic low back pain." Tr. 245. In his assessment, he indicated she had chronic low back pain. He also indicated she had a normal neurological and lumbar MRI and nerve conduction/EMG studies. Tr. 245. He assessed that she was limited by her pain "which could be treated most likely if she would be more cooperative and compliant." *Id.* He also indicated he was releasing her from his care because he had nothing to offer. He found she had no limitations from a neurological standpoint. Tr. 245.

In March 2006, Dr. Warner noted Plaintiff continued to be limited by her pain, but he found no neurological cause for her numbness. Tr. 244. At that visit, Plaintiff asked for information regarding a possible disability. Tr. 244. Dr. Warner noted Plaintiff had not followed through with his recommendation that she have functional capacity testing. He found "no neurological reason why she can't work." Tr. 244.

In January 2006, Plaintiff went to the Greater Greenwood United Ministry Free Clinic with complaints of back pain. Providers at the clinic noted that Plaintiff complained of having shortness of breath with exertion, that her pain responded to palpitation, and that she also had increased pain with bending.  Tr. 205.

In March 2006, John Eichelberger, M.D. evaluated Plaintiff for a new course of physical therapy. His initial evaluation of Plaintiff showed decreased strength and a limited range of motion in her lumbar spine.  Tr. 212–15.  After a successful, six-session course of physical therapy, Plaintiff experienced resolution of her back pain and leg problems, and Plaintiff was discharged to a home exercise program.  Tr. 206–15. The physical therapy discharge note states Plaintiff reported her sitting tolerance had improved to 60 minutes and her standing tolerance improved to 30 minutes, but that she experienced "no limits functionally when she does use good body mechanics."  Tr. 206.  That note includes no notation of doctor-determined limitations.  Tr. 206.

In June 2006, Plaintiff returned to the Greater Greenwood United Ministry Free clinic with claims of continued back pain.  Notes from that visit indicate that she had some success with physical therapy, but that she complained her pain and difficulty breathing had already returned.  Tr. 203.

2.      Mental Complaints

Plaintiff began seeing counselor Candace L. Dorsey prior to January 21, 2003 for depression and anxiety. *See* Tr. 241–43.  On January 21, 2003, Ms. Dorsey noted Plaintiff was having difficulty focusing, which was causing her panic attacks. She recommended to

Dr. Willard that he increase Plaintiff's prescription dosage because of her "strong obsessive thought process." Tr. 242–43. Dr. Willard's January 2003 treatment notes indicate that he did not see Plaintiff as "classically depressed." He thought she was reacting to situational pressures. Tr. 266.

In April 2003, Ms. Dorsey recommended that Dr. Willard switch Plaintiff's prescription from Lexapro to Xanax because Lexapro did not assist with Plaintiff's depression symptoms and Plaintiff still had obsessive thoughts. Tr. 241.

Ms. Dorsey's treatment notes indicated findings of agitation, anxiety, mood swings, anger, cognitive difficulties, sleep difficulties, appetite changes, sexual problems, somatic complaints, difficulty due to dwelling and ruminating, obsessive thought patterns, traumatic stress, family stress, relational problems, fatigue and other symptoms congruent with vegetative depression, problems with focus, irrational thought processes when under moderate stress, inability to function under significant stress, and poor coping. *See* Tr. 135, 136, 240, 378, 379. Ms. Dorsey diagnosed Plaintiff with major depression, anxiety, and R/O obsessive compulsive personality disorder. Tr. 240, 378. She also assessed Plaintiff with Global Assessment of Functioning ("GAF") scores of 51, 52, 53, 49, and 49. Tr. 240, 136, 135, 379, 378. Ms. Dorsey noted Plaintiff's prognosis as "guarded," and found she became easily overwhelmed. Tr. 135, 136, 240, 378.

In July 2003, Plaintiff saw psychiatrist Jeffrey Smith, M.D., who diagnosed her with major depression and assessed a GAF score of 50, which is consistent with a serious

impairment in occupational and social functioning. He found her affect "constricted" and prescribed medication. Tr. 201.

She next saw Dr. Smith in April 2005, who indicated she was not taking medications because of lack of money. She indicated her depression was "bad." Tr. 200. In May 2005, she saw Dr. Smith and reported improved sleep, but no other improvements. Tr. 199. In June 2005, she saw Dr. Smith and reported her depression was "better" and she was having no side effects from the medications. Tr. 198. He noted her affect was "still constricted," but "less negative[.]" Tr. 198.

On July 22, 2005, state agency psychologist Lisa Varner, Ph.D. reviewed Plaintiff's record and completed a Psychiatric Review Technique Form. Dr. Varner determined that Plaintiff's affective, anxiety, and personality disorders resulted in mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Tr. 172. Dr. Varner also completed a mental RFC assessment, finding that Plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and interact appropriately with the general public. Tr. 144–45. Dr. Varner stated Plaintiff could understand, remember, and carry out short and simple instructions and maintain concentration and attention for periods of at least two hours, and would do best in situations that did not require on-going interaction with the public. Tr. 146.

In August 2005, Dr. Smith wrote a letter concerning Plaintiff and opining she would not be capable of maintaining gainful employment. While he indicated Plaintiff had just began to respond adequately to her medication, he noted she was still easily overwhelmed by stress, could not be punctual or reliable, could not achieve production standards or quotas, and could not effectively interact with her peers, supervisors, or the public. Tr. 196.

In October 11, 2005, Plaintiff again saw Dr. Smith. His notes from that visit indicate that her mood was improved, she had less agitation, and her energy was better. Dr. Smith added another medication to aid her in her ability to concentrate. Tr. 194. In November 2005, Plaintiff's affect was brighter, her senses were clear, and the only complaint she had was drowsiness. Dr. Smith advised Plaintiff to alter the timing of her medication to address her issues with sleep. Tr. 193.

In January 2006, Dr. Smith found that Plaintiff's depression was better than "it once was" and she had more energy, but that there was "room for improvement." Tr. 101. In February 2006, Plaintiff's depression was again better and her affect was brighter. Dr. Smith indicated Plaintiff needed no more than minimal medical psychotherapy. Tr. 189.

In August 2005, Ms. Dorsey wrote a letter regarding Plaintiff. She stated that Plaintiff's anxiety and depression overlapped and combined to provide this level of significant impairment and that she "could not work in any sort of job without blanking or zoning out, becoming excessively rattled, or be able to retain a sense of focus and ability to prioritize." Tr. 238. Ms. Dorsey found that her ability to do these things would be

limited to no more than a few hours or days on a sustained basis, noting Plaintiff could not interrelate with people or focus and follow what others are saying because as her stress level increases, her anxiety worsens.  Tr. 238.

Ms. Dorsey renewed these same findings and limitations as unchanged in March 2006.  Tr. 235–37.  At that time, she also completed a medical source statement, finding that based on her impairments, Plaintiff would have marked limitations in her ability to remember locations and work-like procedures; understand, remember, and carry-out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting.  Tr. 235–37.  She further found Plaintiff would have moderate limitations in her ability to understand, remember, and carry-out short and simple instructions; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work related decisions; complete a normal workday or workweek without interruptions from psychologically-based symptoms; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  Tr. 235–37.

In October 2005, a state agency consultant said Plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. Tr. 138–40

In March 2006, Dr. Smith completed a medical source statement, finding Plaintiff has marked limitations in her ability to understand, remember, and carry-out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; complete a normal workday or workweek without interruptions from psychologically based symptoms; interact with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Dr. Smith also found Plaintiff would have moderate limitations in her ability to remember locations and work-like procedures; understand, remember, and carry-out short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and to adhere to basic standards of cleanliness; and be aware of normal hazards and take appropriate precautions. In his comments, Dr. Smith noted Plaintiff is easily agitated and

overwhelmed by even small stressors; she cannot withstand stress; she cannot be punctual and reliable; she cannot meet quotas or production requirements; and she cannot effectively deal with peers, supervisors, or the general public.  Tr. 178–80.

Plaintiff continued to report improvement in and good control of her depression to Dr. Smith through July 2006. Tr. 184–189.  From August to October 2006, her depression worsened.  Tr. 181–183.

In March 2006, Dr. Smith provided a mental RFC assessment form on behalf of Plaintiff indicating that she had "marked" limitations in several areas of functioning, and that she was unable to be punctual, meet production quotas, or deal with others.  Tr. 178–80.

In November 2006, Plaintiff reported to Dr. Smith that her depression was "no better."  He noted her affect was constricted and indicated that she seemed "poorly motivated to get better" (Tr. 127). On December 27, 2006, Dr. Smith wrote a letter for Plaintiff stating that she had significant limitations and could not work. Dr. Smith commented that almost every time she visited his office, she exhibited depressed behavior, psychomotor retardation, poor concentration, and easy distractibility. He also noted that Plaintiff described significantly restricted activities.  Tr. 177.

Dr. Smith's treatment notes from December 1, 2006 to September 2007, show that Plaintiff's depression was fairly well controlled with medications with no side effects.  Tr. 124, 125, 126, 133, 134.

C.     The Hearing Before the ALJ

1.     Plaintiff's Testimony

At the hearing held on October 24, 2007, Plaintiff testified that she stopped working full time in 2002, because the factory where she worked for 33 years closed. Tr. 30, 38. Plaintiff draws retirement from her job at the factory. Tr. 45. After the plant closed, she returned to school and received an associate's degree in business in June of 2004. Tr. 30–31, 40. Plaintiff stated that while she was pursuing her degree, she attended school three to four hours a day and studied for an hour or two every day. Tr. 40. Plaintiff described working part-time after 2002 as a delivery driver and yard worker. Tr. 32–35. She testified that she worked as a delivery driver for "about four or five months" and stopped doing this job because of her back problems. Tr. 32, 36. Plaintiff initially denied that she did any other work after she stopped working as a delivery driver, but then admitted that she worked cutting grass and also had her own business. Tr. 33. She reported that after she lost her factory job in 2002, she started having difficulty with her "nerves." Tr. 37–38. Plaintiff said she spent her days sleeping and watching television, and described having little motivation to leave her home or to do anything. Tr. 41, 46. Plaintiff reported that she had crying spells once or twice a week. Tr. 48. She noted that she saw her parents once a week and went to the flea market on Saturdays. Plaintiff indicated that she sometimes watched her friend's flea market booth for short periods at a time. Tr. 42. She stated that she does her own shopping, does dishes, makes her bed, and handles her own money. Tr. 44.

2.   VE Testimony

VE Feryal Jubran testified that Plaintiff's PRW was as a light, skilled electronics production supervisor (DOT# 726.134-010); medium, unskilled merchandise deliverer (DOT# 299.477-010); heavy, unskilled yard worker (DOT# 301.687-018); and light, semi-skilled flea market vendor (DOT# 279.357-050).  Tr. 54.

The VE testified that if Plaintiff could perform the demands of simple, routine work in a low stress environment, which was defined as requiring few decisions, and was further limited to no interaction with the general public, she could perform the requirements of the representative occupations of warehouse worker (DOT# 922.487-058), janitor (DOT# 381.687-014), packager (DOT# 753.687-038), and electronics assembler (DOT# 706.684-022).  Tr. 55.

The VE also testified that if full credit was given to either the medical source statement or letter of Dr. Smith, or the medical source statement of Ms. Dorsey, such a limited individual would not be able to sustain any gainful employment.  Tr. 56–58.

D.   The ALJ's Decision

The ALJ found Plaintiff performed substantial gainful activity in 2005, making March 12, 2005 the earliest possible onset date for any disability would be March 12, 2005. Tr. 17. The ALJ found that Plaintiff's major depression and anxiety disorders were severe impairments, (Tr. 17), but that her statements regarding her limitations were not fully credible.  Tr. 20.  He found that she had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: simple, routine

work; low-stress environment (defined as requiring few decisions); and no interaction with the general public. Tr. 18. He further found that based on the RFC, Plaintiff could perform the requirements of the representative occupations of warehouse worker, janitor, hand packer, and assembler. Tr. 22.

II.    Discussion

In her brief, Plaintiff argues that the Commissioner's findings are in error for the following reasons:

1) The ALJ did not afford proper deference to the opinions of Plaintiff's treating providers, Dr. Jeffrey Smith and Ms. Candace Dorsey, Ph.D.

2) The ALJ erred in his finding Plaintiff's back pain a nonsevere impairment; and

3) The ALJ did not provide valid reasons for discounting Plaintiff's credibility when considering her subjective claims.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    ALJ Findings

In his February 22, 2008 decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.  The claimant engaged in substantial gainful activity after the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3.   The claimant has the following severe impairments: major depression and an anxiety disorder (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine work; low-stress environment (defined as requiring few decision); and no interaction with the general public.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on July 15, 1951 and was 54 years old when she quit working (March 2005), defined as an individual closely approaching advanced age (20 CFR 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because of the claimant's restriction for only unskilled work activity.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2004, through the date of this decision (20 CFR 404.1520(g)).

Tr. 17–18, 21–23.

B.   Legal Framework

1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

"disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines "disability" as follows:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of "disability" to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1; (4) whether such impairment prevents claimant from performing past relevant work; and (5) whether the impairment prevents her from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step.").

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Id.* If the Commissioner satisfies its burden, the claimant must then establish that she is unable to perform other work. *Id.; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.      The Court's Standard of Review

The Social Security Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*,

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.   Analysis

   1.   The ALJ Properly Considered the Opinions of Plaintiff's Treating Sources, Dr. Smith and Ms. Dorsey.

Plaintiff's first allegation of error is that the ALJ erred by not giving controlling weight to the opinions of her two treating medical sources—psychiatrist Dr. Smith and counselor Ms. Dorsey. Pl.'s Br. 13–21.

SSR 96-2p provides that if a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" *See also* 20 C.F.R. § 404.1527(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). When assessing a treating source's opinion, the ALJ shall consider the factors in 20 C.F.R. §§ 404.1527(d)(2) through (d)(6). However, determinations regarding whether a claimant is "disabled" and related legal conclusions are administrative determinations for the Commissioner and not for medical personnel. 20 C.F.R. § 404.1527(e) (noting certain opinions by medical sources—such as being "disabled" or "unable to work"—are not afforded "special significance").

The Fourth Circuit has set forth the following considerations for an ALJ when weighing and evaluating medical opinions: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006); *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); 20 C.F.R. § 404.1527(d). The rationale for the general rule affording opinions of treating physicians

greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (*quoting Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001)). An ALJ, though, can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Further, in undertaking review of the ALJ's treatment of Plaintiff's treating physician, the court remains mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

SSR 06-03p sets out a list of medical sources the Commissioner considers to be "acceptable medical sources," whose medical opinions "may be entitled to controlling weight" when analyzed pursuant to 20 CFR 404.1527. *See* SSR 06-03p further provides that the Commissioner "may also use evidence from 'other sources'" in considering the severity of a person's impairments and the impact on a claimant's "ability to function." SSR 06-03p.

In August 2005, Plaintiff's treating psychiatrist, Dr. Smith, provided a letter on behalf of Plaintiff, stating that he did not think Plaintiff "capable of gainful employment, at this point in time." Tr. 196. He opined that she would not be able to work because she was easily overwhelmed by stress, could not achieve production quotas, and could not effectively interact with others. Tr. 196. At that time, he indicated that he "strongly disagree[d]" with her being denied disability benefits. He noted that her depression was

beginning to respond to medication and he thought she may be able to work after she had been depression-free for twelve months. Tr. 196.

In March 2006, Dr. Smith completed a mental RFC assessment, opining that Plaintiff had marked limitations in several areas of mental functioning. He indicated she could not handle stress, could not be punctual or reliable, could not meet quotas, and could not deal effectively with peers, supervisors, or the general public. Tr. 178–180. In a letter dated December 27, 2006, Dr. Smith again opined that Plaintiff "continue[d] to have significant limitations[,]" and that she would likely miss hours out of a typical eight-hour work day and days out of a typical five-day work week. Tr. 177.

Ms. Dorsey, who is a licensed professional counselor, also provided a mental RFC concerning Plaintiff. Tr. 235–38. In that March 14, 2006 report, she indicated that Plaintiff was markedly limited in several areas and opined that Plaintiff "could not work in any sort of job without blanking or zoning out, becoming excessively rattled, or being unable to retain a sense of focus and an ability to prioritize." Tr. 237. She also provided a report on June 23, 2005 which indicated Plaintiff was "moderately-to-significantly impaired."

The ALJ recited the appropriate standards and controlling case law for considering opinions of treating physicians and other medical sources and detailed the opinions of Dr. Smith and Ms. Dorsey. Tr. 20. He then found the following regarding their opinions:

> I find the statements of Dr. Smith and Candace Dorsey, unsupported by their treatment notes that show the claimant with a continued depressed affect and difficulties with concentration, but overall improvement in her symptoms

after a short period of medication adjustment, treated with minimal psychotherapy and never requiring inpatient stabilization, and global area functioning (GAF) scores in the low 50's (moderate limitations). In addition, Dr. Smith's statements are based in part on the claimant's subjective complaints which cannot be totally relied upon based on evidence of record that at times she has given questionable effort during testing. Such statements are contradictory to her activities of daily living, her own reports that her depression was "well controlled" and mental examinations that for the most part show her as alert and oriented with normal language and attention, 3/3 memory functioning and normal fund of knowledge. Lastly, such statements concern an issue that is reserved to the Commissioner (Section F, pgs. 124, 133, 172, 176-177, 186–189, 237–238). For these reasons, controlling or great weight could not be given the opinions of Dr. Smith and Candace Dorsey.

Tr. 20.

Plaintiff complains that the ALJ did not afford Dr. Smith's opinion controlling weight and that he did not provide sufficient bases in his decision for discounting Dr. Smith's opinion or Ms. Dorsey's opinion.[1] The Commissioner disagrees and argues the ALJ appropriately discounted their opinions and provided sufficient explanation of why he did not afford the opinions controlling weight. The court agrees with the Commissioner.

The ALJ first explained Dr. Smith's opinion was not entitled to controlling weight because his opinion was inconsistent with his own treatment notes. Tr. 20. He noted that the treatment notes indicated continued depressed affect and concentration difficulties, while also noting overall improvement when her medication was adjusted. Tr. 20. He

---

[1] Plaintiff argues that the ALJ ignored the August 2005 and December 2006 opinions of Dr. Smith. Pl.'s Br. 19. To the contrary, the ALJ specifically cited to both of those opinions in his decision. Tr. 20. As discussed within, the court finds the ALJ properly considered all of Dr. Smith's opinions.

also indicated that Dr. Smith's findings were partially based on Plaintiff's subjective complaints, which the ALJ found could not be relied upon completely. *Id.*

As pointed out by the Commissioner in his brief, Dr. Smith's treatment notes are inconsistent with his findings that Plaintiff could not work. For example, when Plaintiff first visited Dr. Smith in 2003, five months before her alleged onset date, she was both caring for her parents and going to school. Tr. 201. She did not return to Dr. Smith until April 2005, when she complained of recurring symptoms, but admitted she had not been taking her medication. Tr. 200. In May 2005, Plaintiff noted improvement in her sleep. Tr. In June 2005, Plaintiff reported to Dr. Smith that her symptoms were improving. Tr. 199. On July 12, 2005, Plaintiff told Dr. Smith that she believed her "depression [was] well controlled." Tr. 197. He instructed her to return in three months. Tr. 197.

The ALJ reasonably concluded that Dr. Smith's letter of August 1, 2005—approximately two weeks after her July 12, 2005 visit—was inconsistent with his notes from that visit showing depression was well controlled. Tr. 20. Plaintiff's continued visits to Dr. Smith indicate some set-backs, but show numerous visits confirming improvement in her condition. For instance, on August 16, 2005, she reported that she had been "more down" and Dr. Smith adjusted her medication. In October 2005, she had better energy and mood. Dr. Smith found her affect to be "brighter" and "[s]ensorium clear." Tr. 194. Dr. Smith's treatment of November 1, 2005, January 3, 2006, January 31, 2006, February 28, 2006, March 30, 2006, May 9, 2006, June 6, 2006, and July 7, 2006,

all indicate improvement and good control of her depression.  *See* Tr. 184, 185, 186, 187, 189, 190, 191, 193.

The court finds the ALJ appropriately considered Dr. Smith's treatment notes like these to be inconsistent with his March 2006 opinion that Plaintiff had marked limitations in several areas of mental function.  Tr. 178–80.  Dr. Smith's notes indicate Plaintiff's telling him in August, September, October, and November 2006 that her depression was no better.  Tr. 181–83, Tr. 127.  However, in the assessment portion of his notes from her November 3, 2006 visit, he noted that Plaintiff "[s]eems poorly motivated to get better."  Tr. 127.  On December 1, 2006, Plaintiff again visited Dr. Smith.  She indicated her depression was better on medication, but that she was not taking it because of the cost.  Tr. 126.  Dr. Smith's notes indicate that her affect was "bright" and "[s]ensorium clear."  Tr. 126.

It was that same month that he wrote another letter opining that Plaintiff was unable to work.  Tr.177.  Then, on January 19, 2007, Plaintiff again reported that her depression was well-controlled with her medications.  Dr. Smith noted her affect was normal ("euthymic").  Tr. 125.  Dr. Smith's treatment notes through September 2007, show Plaintiff's depression remained controlled with her medications.  Tr. 124, 125, 126, 133, 134.

In his December 2006 opinion, Dr. Smith indicated that his December 2006 claim that almost every time she was in his office she "exhibited depressed behavior with psychomotor retardation, poor concentration with easy distractibility" (Tr. 177) is not

consistent with his treatment notes. He only indicated she had a "constricted" affect twice—in September and October 2006. Tr. 180–81. On December 1, 2006, Dr. Smith noted that Plaintiff's affect was "bright" and her sensorium was clear. Tr. 124.

The court finds appropriate the ALJ's decision to discount Dr. Smith's decision based in part on the conflict between his opinions and his treatment notes. *See Montgomery v. Chater*, No. 95-2851, 1997 WL 76937, at * 1 (4th Cir. Feb. 25, 1997) (upholding ALJ's finding that treating physician's opinion was not persuasive because, among other reasons, his opinion contradicted by contemporaneous treatment records); *see also Garrett v. Astrue*, C/A 09-0798-JFA, 2010 WL 1497666, *5 (Jan. 21, 2010) (same). The notes show overall improvement in her depression and anxiety. Further, they show that Dr. Smith himself was doubting Plaintiff's interest in getting better. Additionally, they show her conditions were generally well-treated with medication. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding a condition is not disabling if it can be reasonably controlled by medicine or treatment).

Additionally, the ALJ also discounted Dr. Smith's opinion because the opinion was based in part on Plaintiff's subjective claims and not his actual clinical findings. Tr. 20. The ALJ notes that Plaintiff's subjective findings may not be fully relied on. Tr. 20. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (finding treating physician's opinion may be rejected if it is based on the claimant's subjective complaints and inconsistent with other evidence of record).

Finally, as pointed out by the ALJ in his opinion, the determination of whether an individual is "disabled" or "unable to work" is not a medical opinion, but is instead an opinion on the ultimate issue "reserved to the [Commissioner]" at the fourth and fifth steps of the sequential evaluation process. *See* 20 C.F.R. § 404.1527(e) (noting certain opinions by medical sources—such as being "disabled" or "unable to work"—are not afforded "special significance"). The ALJ appropriately considered and discounted Dr. Smith's opinion.

Plaintiff also argues that the ALJ erred by not considering Dr. Smith's and Ms. Dorsey's opinions separately. *See* Pl.'s Br. 20–12. The Commissioner disagrees, arguing the ALJ's considering the two opinions together in the written decision was appropriate because he considered her opinion and rejected it for appropriate reasons. Def.'s Br. 18–18 (referencing Tr. 20).

Both Plaintiff and the Commissioner agree that, as a licensed counselor, Ms. Dorsey is not a medical source considered to be "acceptable" for purposes of giving it the presumption of controlling weight. *See* Def.'s Br. 17, Pl.'s Br. 20 (both citing to SSR 06-03p). The court agrees with the Commissioner that the ALJ gave Ms. Dorsey's opinion due consideration in accordance with SSR 06-03p and applicable regulations. He indicated that Ms. Dorsey's opinions were not supported by her treatment notes and, when viewing all record evidence, were not supported by the substantial evidence of record. Tr. 20.

The court agrees that the ALJ appropriately considered Ms. Dorsey's opinions. In January 2003, Dr. Willard, one of Plaintiff's treating doctors, indicated in his notes that,

although Ms. Dorsey had persuaded Plaintiff that she had depression, he was not convinced. Tr. 266. He did not see Plaintiff as "classically depressed," but thought she was under pressure from family issues, losing her job, and going back to school. Tr. 266. Although Ms. Dorsey indicated Plaintiff had debilitating mental limitations, the record, including Dr. Smith's notes, reflect that her impairments were improved and controlled with conservative treatment with medication. Plaintiff had been seeing Ms. Dorsey since 2004. In June 2005, Ms. Dorsey indicated Plaintiff had major depressive disorder and anxiety disorder, as well as other diagnoses. Tr. 240. However, Plaintiff testified before the ALJ that she had continued to work until March 12, 2005. *See* Tr. 35. This contradicts Ms. Dorsey's "nonapproved medical provider" opinion that Plaintiff was disabled. The ALJ appropriately discounted her opinion.

Finally, Plaintiff argues that the ALJ erred because he did not give specific articulation to each of the factors listed in 20 C.F.R. § 404.1527(d)(1-6). Although these factors provide an ALJ must consider them when evaluating a medical opinion, nothing in the regulation requires express discussion on a factor-by-factor basis. 20 C.F.R. § 404.1527(d)(1-6).

The court finds that the ALJ appropriately considered and discounted the opinions of Dr. Smith and Ms. Dorsey. Plaintiff's first allegation of error should be dismissed.

2.     Substantial Evidence Supports The ALJ's Finding Plaintiff's Back
       Pain Is a Nonsevere Impairment.

Next, Plaintiff argues the ALJ erred by not finding her pain complaints to be severe

impairments.  Pl.'s Br. 21–23.  The ALJ considered her claim of low back pain,[2] but found

it to be a nonsevere impairment.  In his decision, the ALJ set out Plaintiff's claims of back

pain as follows:

> The claimant has a long history of low back pain that was aggravated by
> performing heavy landscaping work. Her back pain is reportedly made
> worse by the stress of caring for her family, her loss of job, and her return to
> school. Her back pain however, has not precluded her from deriving pleasure
> in activities for prolonged periods. Her pain flares approximately once per
> year, is primarily brought on by her failure to follow home exercises and
> "overdoing" things (i.e., a 6 hour drive to Florida and her continued
> landscaping and delivery truck work), at which time she is treated with a
> short trial of physical therapy. Magnetic resonance imaging (MRI) showed
> minimal bulging with possible annular tear in October of 2002, but no
> stenosis or compressive pathology to explain her complaints, and
> neurological evaluations and EMG/nerve conduction studies have been
> unremarkable. She reports significant improvement with physical therapy
> and, as long as she uses good body mechanics, she is said to have no
> functional limitations (pg. F167).

Tr. 16–17.  He then provided the following rationale for finding the claims do not support

a finding that her back pain created a severe impairment:

> This is confirmed by her activities of daily living of making her bed,
> preparing food, putting dishes in the dishwasher, wiping counters, driving,
> shopping flea markets and yard sales, fishing a couple times per year,
> visiting with friends/family daily, [s]he continued substantial work activity

---

[2] In her brief, Plaintiff characterizes this complaint as including "leg and back
pain."  Pl.'s Br. 22 (*citing* Tr. 251).  This characterization apparently comes from her
description of her pain to Dr. Warner on February 11, 2004.  She does not seem to have a
separate complaint of "leg pain."  *See* Tr. 251 ("Patient follows up complaining of low
back pain that radiates into the right leg with numbness of the right leg.").

until March 2005, and her work thereafter of occasionally substituting for her partner at the antique booth. She was told to lift no more than 40 pounds but this was based only on her subjective complaints, she was advised to lose weight, and she failed to go for formal functional capacity testing (Section F, pg. 129). She had unremarkable neurological evaluation in March of 2006 and it concluded her only limiting factor was her "subjective pain". The record further indicates that she gave questionable effort during EMG/nerve conduction studies (Section F, pgs. 55, 66-76, 80 and 107). Considering the overall evidence, I find the claimant's low back pain represents a "non-severe" impairment as defined in the regulations.

Tr. 18.

Plaintiff argues that the ALJ "mischaracterized the record" in finding there to be no objective evidence to support her complaints and finding that no physician indicated she had functional limitations. Pl.'s Br. 22. In particular, he claims error in the ALJ's not acknowledging that Plaintiff's 2005 MRI report provided objective evidence for her pain complaints and in not noting that Dr. Eichelberger had reported functional limitations for Plaintiff.

The court disagrees. Review of the record reveals that the ALJ's conclusion that Plaintiff's complaints of back pain were appropriately considered and found to be nonsevere. Social Security regulations define an impairment as "severe" if it impairs a claimant's ability to work. "Severe" in this situation is a term of art, which means the impairment at issue "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). SSR 96-8p contemplates that a "severe" impairment "has more than a minimal effect on the ability to do basic work activities." SSR 96-8p. Plaintiff bears the burden of proving an impairment is "severe." *Bowen v.*

*Yuckert*, 482 U.S. 137, 146, n.5 (1987). The obverse, then, is that, if pain does not impair

work ability, it is "nonsevere." The court finds that the ALJ's ruling that Plaintiff's back

pain was a nonsevere impairment is supported by substantial evidence.

Dr. Warner, whom Plaintiff herself describes as her treating physician, discussed

Plaintiff's June 2005 MRI as showing only "mild degenerative changes within the lumbar

spine." Tr. 246. In those same treatment notes from Plaintiff's July 12, 2005 visit, Dr.

Warner's assessment indicated that prior imaging and EMG had been "unremarkable." *Id.*

The ALJ specifically cited to Dr. Warner's treatment notes of March 14, 2006. Tr. 18

(citing to "Section F, pg. 129," which is page 244 of the record). In that report, Dr.

Warner commented that Plaintiff sought information from him "pertaining to possible

disability." Tr. 244. In the "Assessment" sections of that treatment entry, Dr. Warner

very plainly stated as follows:

> Middle-age female with a complaint of chronic low back pain has been
> present for many years. She states she cannot work because of the pain. **I
> see no neurological reason why she can't work. There's no obvious
> nerve damage or wasting of muscles.** Her limiting factor is her complaint
> of pain. Unfortunately from our previous discussions the jobs that she's
> sometimes considers [sic] are all physically demanding jobs.

Tr. 244 (emphasis added). This finding by Plaintiff's treating physician supports the

ALJ's finding that Plaintiff's claims of back pain are not "severe." In addition, other

physical examinations of record reveal no objective physical findings indicating her claims

of back pain would prevent her from working. *See, e.g.*, Tr. 235 (Dr. Warner's August 2,

2005 assessment from exam, indicating normal neurological exam, lumbar MRI and nerve

conduction studies and noting that "[m]ost of what limits her is pain which could be treated most likely if she would be more cooperative and compliant."); Tr. 249 (noting normal standard and tandem gait).

The ALJ's finding is well supported. Pain cannot be considered disabling per se. *Gross*, 785 F.2d at 1166 ("Pain is not disabling per se, and subjective evidence alone cannot take precedence over objective medical evidence or the lack thereof.") (internal citation omitted). Interestingly, Plaintiff cites to this same March 2006 treatment note from Dr. Warner as supporting her claim of being limited by pain. *See* Pl.'s Br. 22 and n.113 (*citing* Tr. 244). His notes do not support that claim. In fact, they indicate Plaintiff had not followed Dr. Warner's directive to obtain functional capacity testing and his objective findings indicate full motor strength with normal bulk and tone and completely normal sensation, reflexes, coordination, and gait. Tr. 244. Dr. Warner's treatment notes support the ALJ's finding, not Plaintiff's argument.

The ALJ also pointed out that Plaintiff periodically underwent only conservative treatment for her complaints of back pain consisting of physical therapy. Tr. 18. *See Gross*, 785 F.2d at 1166 (conservative treatment does not support claim of disability). The medical record shows good resolution of Plaintiff's back pain with this conservative treatment. In fact, she was discharged from physical therapy on April 17, 2006, after only six sessions. Tr. 206. At the notes from April 2006 indicate, Plaintiff indicated she had no "limits functionally" when using "good body mechanics." Tr. 206. In that note, Dr.

Eichelberger's objective findings indicated she had a normal gait pattern and was observing good body mechanics. *Id.*

Plaintiff tries to use Dr. Eichelberger's April 17, 2006 entry to support her argument that her back pain imposed functional limitations. Pl.'s Br. 22. To the contrary, as pointed out by the Commissioner in his brief, these notes indicate Plaintiff's self-reported assessment of her limitations. The notes indicate the following: "At this time, patient reports that her sitting tolerance has improved to 60 minutes and her standing tolerance has improved to 30 minutes and she is no longer experiencing radicular symptoms in bilateral lower extremities." Tr. 206. This report of what Plaintiff believed her functional limits to be and that they were "improved," though, does not establish what Plaintiff claims it does. Nothing in the record to which Plaintiff has pointed or the court's independent review has revealed indicates Dr. Eichelberger placed any physical limits on her. Notably, his Objective Physical Findings in that same April 2006 report mention nothing about any physical limits on Plaintiff's ability to work or, for that matter, any limitations on her. *See* Tr. 206. *See Lee v. Sullivan*, 945 F.2d 687, 693 (4th Cir. 1991) (the absence of an opinion by any physician that a claimant is totally and permanently disabled may support a denial of benefits).

The ALJ's finding Plaintiff's back pain was not severe, i.e., that it did not limit her ability to work, is supported by substantial record evidence.

3. The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

Finally, Plaintiff argues the ALJ's finding that her subjective complaints were not fully credible is unsupported by substantial evidence. Pl.'s Br. 23–24. The ALJ appropriately conducted the two-step analysis required in considering a claimant's subjective complaints. *See Craig*, 76 F.3d at 594. At step one, the ALJ found that Plaintiff's severe impairments of depression and anxiety disorders could reasonably produce Plaintiff's claimed symptoms. Tr. 20. He then considered the medical evidence, reports of Plaintiff's mental health providers (discussed above in this report and recommendation), and considered Plaintiff's daily activities in determining Plaintiff's RFC. Tr. 20–21. He found Plaintiff had no exertional limitations. Tr. 21. He also found Plaintiff's RFC limited to "simple, routine work in a low-stress environment (defined as work requiring few decisions) and which would not require interaction with the general public." Tr. 21.

In his decision, he explained his consideration of Plaintiff's subjective allegations and limitations as follows:

> In arriving at this decision, I have considered the claimant's subjective allegations and report of limitations; however, considering the claimant's activities, her lack of hospitalizations or frequent emergency room visits, examinations that note subjective allegations but minimal to no more than moderate clinical findings; the claimant's failure to follow treatment as prescribed at times; her need for apparently no more than "minimal" medical psychotherapy; the absence of report in treatment notes of significant side-effects attributable to medication (on an ongoing basis), indications that the claimant at times has given questionable effort during testing, and her continued work on an occasional basis when her partner is unable to run the

antique booth, I find her allegations of disabling pain and limited functional capacity to be less than fully credible (SSR's 96-3p and 96-7p).

Tr. 21.

Plaintiff specifically claims that the ALJ's focus on the fact that Plaintiff was not psychologically hospitalized (Tr. 21) does nothing to undermine her credibility because she never claimed such hospitalization. Tr. 24. That argument misses the point. The ALJ appropriately considered Plaintiff's minimal, conservative treatment for her medical conditions in her credibility. Part of that analysis included his comparing her claimed-to-be "disabling" subjective claims with her conservative treatment—including her never being hospitalized for psychiatric reasons. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)(upholding ALJ's comparison between claimant's level of treatment and her claims of disabling pain in disability). The ALJ's notations regarding limited, conservative treatment are supported by substantial record evidence. *See, e.g.*, Tr. 184–193 (psychiatrist's orders for "[p]harmacologic management [of depression] with no more than minimal medical psychotherapy."). The ALJ appropriately considered this conservative treatment in considering Plaintiff's credibility. *See Jolley v. Weinberger*, 537 F.2d 1179, 1181 (4th Cir. 1976) (finding inferences can be properly drawn from record evidence); *Johnson*, 434 F.3d at 658 (finding ALJ could reject claimant's testimony because it was inconsistent with the objective medical evidence); *Gross*, 785 F.2d at 1166 (noting if a symptom can be reasonably controlled by medication or treatment, it is not disabling).

Plaintiff also argues the ALJ improperly referenced her possibly giving decreased efforts during testing, as well. Plaintiff claims the ALJ overemphasizes this point and that it seems to be based on one note in which Dr. Sherrill indicates certain findings could suggest "diminished effort due to pain." Tr. 298. The court does not disagree with Plaintiff's argument that this particular notation may not impugn Plaintiff's credibility. However, the court is ever mindful that its role is not to examine and weigh specific evidence or credibility matters. Rather, it is to consider whether the ALJ's findings are supported by substantial record evidence. Here, the ALJ's findings are supported by the record. Because this credibility determination is supported by substantial evidence, the court should defer to the ALJ and not substitute its judgment for that of the finder of fact. *See Hays*, 907 F.2d at 1456.

As discussed within, the objective medical evidence of record did not support Plaintiff's claimed disability. Plaintiff's subjective complaints cannot take precedence over objective medical evidence or the lack thereof. *Craig*, 76 F.3d at 592; *see also Mickles*, 29 F.3d at 923 (finding allegations of pain and other subjective symptoms, without more, insufficient to establish disability).

The ALJ made specific note of Plaintiff's activities of daily living in his credibility determination. Plaintiff continued working and even ran her own business through 2005, well after her alleged January 2004 onset date. Tr. 33. Further, at the hearing, Plaintiff admitted that she sometimes watches her friend's flea market booth and substitutes for friend when she is not at the booth. Tr. 42–43. She does her own shopping and

housework and handles her own money. Tr. 44. These activities provide substantial record evidence to support the ALJ's finding that Plaintiff's claims of debilitating mental problems are less than credible. The Fourth Circuit has repeatedly cited significant activities with approval as a factor in discrediting subjective complaints. *See, e.g., Johnson*, 434 F.3d at 658 (4th Cir. 2005); *Mastro*, 270 F.3d at 179; *English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir. 1993); *Mickles*, 29 F.3d at 921; *Gross*, 785 F.2d at 1166.

In summary, the court finds that the ALJ properly considered inconsistencies between Plaintiff's testimony and other evidence of record in evaluating the credibility of her subjective complaints. *See Hunter*, 993 F.2d at 33. The ALJ properly considered the record a whole in analyzing Plaintiff's credibility. Plaintiff's third allegation of error is without merit.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental and physical conditions, and the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, and Section 1631(c)(3) of the Act, 42 U.S.C.

Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

Shiva V. Hodges

August 3, 2010                           Shiva V. Hodges
Florence, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**